[15 NYS3d 309]

In the Matter of Luigi Rosabianca, a Suspended Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, July 28, 2015

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Orlando Reyes* of counsel), for petitioner.

*McDonough and McDonough LLP* (*Chris McDonough* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on December 13, 2000. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

By order of this Court entered March 12, 2015 (127 AD3d 142 [1st Dept 2015]), respondent was immediately suspended from the practice of law, based on his failure to cooperate with the Departmental Disciplinary Committee's (Committee) investigation of four complaints, and on uncontested evidence that he misappropriated client funds. Respondent, proceeding pro se, did not respond to the Committee's suspension motion.

On March 12, 2015, the Committee sent respondent a copy of this Court's suspension order via email. On March 13, 2015, the Committee served respondent with the suspension order with notice of entry at both his registered office address and his home address by first-class and certified mail, return receipt requested. Delivery confirmations from the United States Postal Service show delivery of the papers to both these addresses occurred on March 16, 2015; the return receipts were signed for and returned to the Committee bearing signatures other than that of respondent. Respondent has not filed an affidavit of compliance as required by Rules of the Appellate Division, First Department (22 NYCRR) § 603.13 (f).

In February 2015, respondent represented sellers of a cooperative apartment in a real estate transaction. On March 12, 2015, the date of respondent's suspension, at 6:56 p.m., respondent sent the buyer's counsel an email requesting that counsel

send a contract of sale signed by the purchasers along with the contract deposit, which buyers' counsel did. By letter dated March 16, 2015, respondent provided the buyers' counsel with a fully executed contract of sale and confirmed that the $108,500 contract deposit had been deposited into his IOLA account. On March 26, 2015, one of the buyers informed his counsel that he had learned of respondent's suspension by way of a published article. The buyers' counsel then left a voice mail message for respondent who responded by email and stated that his clients' file had been transferred to another attorney's office. On March 27, 2015, the buyers' counsel received an email from respondent in which he stated that the sellers would be seeking new counsel on their own. According to an affidavit from the buyers' counsel, he at no point had any conversations with respondent or his office in which the issue of respondent's suspension was mentioned.

In September 2014, respondent was retained to represent buyers in another real estate sale. Between March 12 and March 16, 2015, the sellers' counsel communicated with respondent and his employees by telephone and email in preparation for the closing. The sellers' counsel stated that on March 16, 2015, respondent appeared at the closing on behalf of the buyers. Although the closing went forward, the transaction closed in escrow because the buyers did not comply with their contractual obligation to deliver official bank checks for the balance of the purchase price. Thus, the closing was adjourned and, thereafter, respondent continued to communicate with the sellers' counsel by email on behalf of the buyers.

On March 17, 2015, the sellers' counsel's firm learned of respondent's suspension by online research precipitated by respondent's failure to deliver bank checks for the balance of the purchase price in accordance with the contract of sale. Upon learning of respondent's suspension, the sellers' counsel's firm consulted with outside ethics counsel and sent respondent a letter in which, among other things, it advised him to cease all representation of the purchasers. The sellers' counsel stated in an affidavit that the buyers have retained new counsel and the parties are presently working toward completing the transaction.

In yet another real estate sale, respondent represented the sellers of a Manhattan apartment; according to an affidavit from the buyers' counsel, respondent represented the sellers at the March 18, 2015 closing, which took place at respondent's

office. Respondent accepted a check from the buyer's counsel for $97,231.02 and deposited it into his attorney trust account. The buyers' counsel stated that to the best of his recollection, he became aware of respondent's suspension on March 27, 2015 when the title company for the transaction informed him that escrow checks issued by respondent had not cleared because respondent's escrow account had been frozen; after further investigation, the title company learned that respondent had been suspended.

In addition to the previously discussed real estate transactions, the Committee alleges that, as of April 29, 2015, respondent continued to hold himself out as a licensed New York attorney on an Internet web page.

The Committee now seeks an order, under Judiciary Law §§ 90 (2) and 486, immediately disbarring respondent, without further proceedings, for willfully engaging in the unauthorized practice of law in violation of Judiciary Law § 478 and/or 22 NYCRR 603.13 and this Court's March 12, 2015 suspension order; appointing a receiver to safeguard and distribute, as it is proper, any client or third-party funds in respondent's trust account; and granting such other and further relief as this Court may deem just and proper.

Respondent opposes the Committee's motion and asks that the matter be referred for a hearing.

The Committee's motion to disbar respondent without further proceedings is granted based upon the uncontroverted evidence that respondent has continued to practice law in violation of this Court's prior suspension order and in violation of Judiciary Law §§ 90 (2) and 486 (see e.g. Matter of Streit, 89 AD3d 190 [1st Dept 2011]; Matter of Blau, 70 AD3d 28 [1st Dept 2009]).

Additionally, the Committee has requested the appointment of a receiver to safeguard and distribute any funds in respondent's attorney trust account. In light of the evidence presented in the underlying interim suspension motion that respondent made numerous online transfers from his attorney trust account to his business account, which repeatedly had negative balances, and that he wired $1.5 million from his IOLA account to what was believed to be an Italian banking or investment firm, we grant the Committee's request to the extent of appointing a receiver over all client funds delivered to respondent and his law firm, to inventory all of respondent's client files and to take such action as seems indicated to protect

the interests of the clients and to protect the interests of respondent pending further order of the Court (*see e.g. Matter of Siskin*, 78 AD3d 112 [1st Dept 2010]; *Matter of Berman*, 45 AD3d 219 [1st Dept 2007]). We further provide the receiver with authorization to make transfers and withdrawals from the various bank and attorney trust accounts maintained by respondent and his law firm (*see Matter of Weinstein*, 12 AD3d 217 [1st Dept 2004]).

Accordingly, the Committee's motion should be granted, respondent disbarred from the practice of law, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately. It is further ordered that a receiver is appointed and respondent is directed to comply with 22 NYCRR 603.13 (g), as indicated.

TOM, J.P., ACOSTA, SAXE, MOSKOWITZ and FEINMAN, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof. Receiver appointed, as indicated.