[62 NYS3d 62]

In the Matter of ALEX H. PIERRE (Admitted as ALEX HUGUES PIERRE), an Attorney, Respondent. ATTORNEY GRIEVANCE COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 5, 2017

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Attorney, Attorney Grievance Committee,* New York City (*Kathy W. Parrino* of counsel), for petitioner.

No appearance for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Alex H. Pierre was admitted to the practice of law in the State of New York by the First Judicial Department on June 10, 1991, under the name Alex Hugues Pierre. Respondent was also admitted to practice in Pennsylvania in 1993. Respondent's last business address listed with the Office of Court Administration is in Manhattan. Since June 7, 1999, respondent has been suspended from the practice of law in New York State by this Court for failing to file and pay his biennial registration dues. He has not appeared in this matter.

On December 9, 2003, the Pennsylvania Office of Disciplinary Counsel filed a petition for discipline against respondent alleging misrepresentation to a client and opposing counsel, unlawful collection of a contingency fee, commingling of fiduciary funds, and mishandling of several matters. Respondent appeared *pro se* at a disciplinary hearing before a three-person hearing committee. The committee recommended that he be suspended for three years, at which time respondent sought further review and was granted oral argument before a three-member panel of the Disciplinary Board (the Board).

In a report and recommendation dated June 13, 2005, the Board noted that there were two charges brought against respondent involving a total of 11 disciplinary violations and aggravating factors. With respect to the first charge, the Board found that: on July 9, 1998, a woman was injured while riding a Southeastern Pennsylvania Transportation Authority (SEPTA) bus and on July 14, 1998, she retained respondent by executing a 40% contingency fee arrangement. The client received medical care from NovaCare Outpatient Rehabilitation. In June 1999, NovaCare's counsel sought payment of her medical bill totaling $4,106.25. Respondent was given copies of the bills and a statement of account from NovaCare's counsel.

By letter dated June 1, 2000, respondent wrote to SEPTA's claims department seeking a claim number. However, by letter dated July 14, 2000, a SEPTA claim supervisor informed respondent that the statute of limitations had expired for third-party benefits. Respondent did not inform his client that he

had failed to commence an action before the statute of limitations expired. SEPTA erroneously closed its claim file, even though the statute of limitations for the client's claim for first-party benefits had not expired.

By letter dated November 27, 2000, respondent requested that SEPTA pay the NovaCare outstanding medical bill as it was a claim for first-party benefits. From December 2000 to February 2001, respondent provided SEPTA with numerous documents in support. On July 9, 2001, respondent commenced a lawsuit against SEPTA to recover first-party benefits for his client.

On August 13, 2001, SEPTA extended a settlement offer of $5,000 for the first-party benefits claim, which included any outstanding balances owed to medical providers, including NovaCare. Respondent then called NovaCare's counsel and, without disclosing the settlement offer, asked if NovaCare would reduce its bill from $4,106.25 to $3,079.68, which it did. Respondent led his client to believe that the $5,000 settlement was for her third-party benefit claim, not her first-party benefit claim, and had her sign a release. He also had his client provide him with her medical card to address any outstanding medical bills. Respondent sent SEPTA the signed release and a $5,000 settlement check was sent payable to respondent and his client.

On November 20, 2001, following the settlement, NovaCare's counsel inquired about the status of the SEPTA action and respondent told counsel that the settlement had not been completed (even though it had). On November 26, 2001, respondent received the SEPTA $5,000 settlement check, and commingled fiduciary funds with his personal funds by depositing the check into his checking account. Respondent then had his client sign a settlement sheet which stated that he would retain $2,300 ($2,000 for attorney's fees and $300 for costs), and his client would receive $2,700. The settlement sheet gave the false impression that it was for the third-party benefit claim, and left blank the section indicating the amount withheld for medical bills. Respondent misappropriated monies intended for NovaCare by dividing between himself and his client the proceeds of the $5,000 settlement. Respondent retained $2,300 for his own use and benefit and he gave his client a personal check for $2,700. Pursuant to Pennsylvania law, respondent was prohibited from charging and collecting a contingency fee for services in connection with the first-party benefit claim.

In addition, respondent intended to use his client's medical card to have the Commonwealth of Pennsylvania pay the NovaCare outstanding balance so that no one would discover that he had misappropriated funds intended for payment of NovaCare's bills or missed the statute of limitations on the third-party benefits claim. In January and February 2002, NovaCare's counsel inquired numerous times about the status of the SEPTA settlement, to which respondent falsely stated that he had not received any settlement monies and that he did not know where the money went. In March 2002, respondent did not have sufficient funds in his checking account to cover the funds he was required to maintain on behalf of NovaCare.

Respondent's client complained to the Office of Disciplinary Counsel, and on April 26, 2002, the Office advised respondent of the complaint. On May 6, 2002, respondent sent NovaCare's counsel a check for $2,300 and represented that the check was for the "total remainder of the first-party funds collected." On May 10, 2002, NovaCare's counsel hand-wrote that the file was closed on respondent's letter and faxed him a copy.

With respect to the second charge, the Board found that respondent was retained to represent a client in two consolidated civil actions. On February 2, 1999, during the trial, respondent failed to introduce certain insurance contracts into evidence before resting. A year later, the court granted defendants' motion for compulsory nonsuit and dismissed the case because of respondent's failure to introduce the insurance contracts.

In aggravation, the Board found that respondent was notified that he was placed on inactive status by order of the Supreme Court of Pennsylvania effective December 1, 2002, but from December 1, 2002 to June 3, 2004, respondent held himself out as a duly licensed active attorney. He represented existing and new clients, appeared in at least nine legal matters, and failed to take any action to remove himself from the practice of law. As of the date of the disciplinary hearing before the hearing committee (June 2004), he had still not brought himself into compliance with the Supreme Court's order. In July 2004, respondent was transferred back to active status. The Board further found that respondent was less than candid at the hearing and did not show remorse for his actions.

The Board found that respondent had violated the Pennsylvania Rules of Professional Conduct regarding competent representation, acting with reasonable diligence and promptness, keeping a client informed about the status of a matter, explain-

ing information to clients to allow them to make informed decisions, not collecting an illegal or excessive fee, not commingling client or third-party funds with attorney funds, not notifying a client or third party of receipt of funds to which they are entitled, not knowingly making a false statement to a third person, not violating the Rules of Professional Conduct, not committing a criminal act that reflects adversely on the lawyer's honesty, and not engaging in dishonesty, fraud, deceit or misrepresentation.

In assessing what sanction to recommend, the Board noted that

> "[r]espondent's misconduct involved not only the complete mishandling of his clients' matters, but deception toward his client . . . and opposing counsel. Respondent made rudimentary missteps in his handling of [his client's] case, and very inartfully and dishonestly attempted to resolve the problems and cover his tracks. Aggravating factors present in this matter [include that] . . . [r]espondent has engaged in the unauthorized practice of law while on inactive status, he failed to show demonstrable remorse, and was found . . . to be less than candid in his testimony before the Committee."

Although the majority of the Board recommended a two-year suspension, by order entered August 30, 2005 (584 Pa 116, 880 A2d 1233 [2005]), the Supreme Court of Pennsylvania suspended respondent for three years.

In September 2004, the Pennsylvania Office of Disciplinary Counsel filed a second petition for discipline against respondent alleging incompetence and unauthorized practice of law. Once again respondent appeared pro se at a disciplinary hearing before a three-person hearing committee which recommended that he be suspended for one year and one day, at which time respondent sought further review and was granted oral argument before a three-member panel of the Board.

In a report and recommendation dated December 21, 2005, the Board set forth two charges. With respect to the first charge, they found that in 1998 when respondent was an associate at a law firm, he filed a legal malpractice complaint but repeatedly failed to answer expert interrogatories, resulting in defense counsel obtaining two court orders directing him to produce responses, which he failed to do. In May 2000, respon-

dent finally provided responses, albeit more than three months after the court ordered deadline. In June 2000, defense counsel moved to prohibit presentation of any expert testimony, and in August 2000, the trial court granted the defendants' summary judgment motion. The trial court denied reconsideration and its decisions were affirmed by Pennsylvania appellate courts.

With respect to the second charge, the Board found that, as noted above, by order of the Supreme Court of Pennsylvania, respondent was placed on inactive status as of December 1, 2002, however he continued to practice law for 18 months thereafter. Specifically, he engaged in at least 12 client matters, including taking on new cases, appearing in court, submitting pleadings, holding client meetings, and attending settlement conferences. In addition, the Board noted that from 1998 to 2005, six legal malpractice actions and one wrongful use of civil process action were filed against respondent. With respect to those cases, two remained unresolved as of December 21, 2005, one was discontinued, and four resulted in judgments against respondent.

The Board found that respondent had violated the Pennsylvania Rules of Professional Conduct regarding competent representation, acting with reasonable diligence and promptness, keeping a client informed about the status of a matter, explaining information to clients to allow them to make informed decisions, communicating the basis or rate of fee in writing before or within a reasonable time after commencing legal representation, not withdrawing given that his representation violated the Rules of Professional Conduct, knowingly making a false statement of material fact of law to a tribunal, knowingly making a false statement to a third person, practicing in a jurisdiction in violation of professional regulations in that jurisdiction, and engaging in conduct that is prejudicial to the administration of justice. The Board also found that respondent willfully violated the Pennsylvania Rules of Disciplinary Enforcement by, inter alia, failing to notify various individuals, including clients and adverse parties, of his transfer to inactive status.

The Board noted that there was overlapping between the two disciplinary matters "as the acts of misconduct in the instant proceeding occurred during the same time frame as the misconduct in the previously determined matter" but respondent's misconduct of engaging in the unauthorized practice of law was not charged in the former; it was only considered in aggravation. The Board found that in addition to his unautho-

rized practice of law, respondent "demonstrated a clear lack of competence in his handling of [one] matter, a consequence of which was the dismissal of his clients' civil case," and, in aggravation, was the fact that respondent's competency or conduct had been placed in issue in at least seven civil cases, six of which were legal malpractice cases. Referring to respondent's suspension imposed in the previous disciplinary matter for his "multiple acts of misconduct . . . wherein he commingled and converted client funds and engaged in other acts of dishonesty," the Board recommended that respondent be suspended for three years, to run concurrent to his three-year suspension previously imposed by the court on August 30, 2005.

By order entered March 28, 2006 (587 Pa 129, 897 A2d 1162 [2006]), the Supreme Court of Pennsylvania agreed with the Board's report and recommendations and suspended respondent for three years to run concurrent with the suspension order of August 30, 2005.

Respondent remains suspended in New York and Pennsylvania. Respondent failed to notify this Court or the Attorney Grievance Committee (the Committee) within 30 days of his suspensions ordered by the Pennsylvania Supreme Court in 2005 and 2006 in violation of former Rules of the Appellate Division (22 NYCRR) § 603.3 (d) (now 22 NYCRR 1240.13 [d]). The first report of such foreign discipline came in an April 25, 2017 letter.

On April 25, 2017, respondent wrote the New York Office of Court Administration after having received his attorney registration forms: "Please be advised I have no intention to register at this time due to an ongoing three-year suspension effected by Order of the Supreme Court of Pennsylvania issued according to information and belief September 30, 2005. I herewith request you take appropriate action for concurrent suspension." He also provided an updated New York address.

The Committee now moves for an order, pursuant to Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.13, imposing reciprocal discipline on respondent, predicated upon discipline imposed by the Supreme Court of Pennsylvania. The Committee requests that respondent be disbarred, effective as of April 25, 2017, the date he reported his foreign discipline (rather than nunc pro tunc to August 30, 2005, when he was disciplined in Pennsylvania).

Respondent, pro se, was personally served in hand with this motion at his New York registered address but has not filed any response papers.

In this proceeding, respondent is precluded from raising any defenses except: (1) lack of notice or opportunity to be heard in the foreign jurisdiction constituting a deprivation of due process; or (2) an infirmity of proof establishing the misconduct presented to the foreign jurisdiction; or (3) that the misconduct for which the attorney was disciplined in the foreign jurisdiction does not constitute misconduct in this state (*Matter of Hoffman*, 34 AD3d 1, 2-3 [1st Dept 2006]; *Matter of Power*, 3 AD3d 21, 23 [1st Dept 2003]).

Respondent was provided with sufficient notice and opportunity to be heard in Pennsylvania, as evidenced by his appearance pro se at the hearings before the disciplinary hearing committee and the Board. He also submitted written objections which were considered. In addition, respondent has not disputed that the findings of misconduct by the Pennsylvania Supreme Court and subsequent suspensions were fully supported by the record. He also does not argue that such findings should not be accepted by this Court.

Further, the misconduct for which respondent was disciplined in Pennsylvania constitutes misconduct in New York. The Supreme Court of Pennsylvania found that respondent violated numerous rules of professional conduct for engaging in conduct that includes misrepresentations to a client and opposing counsel, commingling of fiduciary funds, and practicing law while on inactive status.

Thus, the only issue left for this Court to decide is the appropriate sanction to impose. As a general rule, in reciprocal disciplinary matters, this Court gives significant weight to the sanction imposed by the jurisdiction in which the charges were initially brought (*see Matter of Peters*, 127 AD3d 103, 109 [1st Dept 2015]; *Matter of Cardillo*, 123 AD3d 147, 150 [1st Dept 2014]).

While the Pennsylvania court did not disbar respondent for his actions, this Court has found that where the sanction imposed in the original jurisdiction substantially deviates from that of New York, a more severe penalty may be imposed (*see Matter of Munroe*, 89 AD3d 1 [1st Dept 2011]). In *Munroe* this Court found that an attorney, who had been suspended for 2½ years in Massachusetts for engaging in a pattern of fraud, forgery, filing frivolous lawsuits and conversion, should be disbarred in New York (*id.*).

Here, the Pennsylvania court disciplined respondent after finding that he willfully engaged in the unauthorized practice

of law for 18 months as he accepted new clients, failed to notify his new or former clients of his status, filed legal documents, and appeared in court numerous times after he was moved to "inactive" status. Under this Court's precedent, engaging in the unauthorized practice of law over an extended period of time following a disciplinary suspension has resulted in disbarment (*Matter of Sampson*, 145 AD3d 95 [1st Dept 2016]; *Matter of Rosabianca*, 131 AD3d 215 [1st Dept 2015]).

Moreover, in reciprocal discipline cases, this Court has imposed harsher discipline on attorneys who failed to timely notify the Committee of his or her discipline in a foreign juris-diction (*see Matter of Gilbert*, 268 AD2d 67 [1st Dept 2000]). Here, respondent waited 12 years before reporting his Pennsyl-vania suspension, in direct violation of 22 NYCRR 1240.13 (d).

Additionally, this Court has held that "absent extremely unusual mitigating circumstances, the intentional conversion of client funds mandates disbarment" (*Matter of Ballner*, 140 AD3d 115, 119-120 [1st Dept 2016] [internal quotation marks omitted]). Here, respondent commingled fiduciary funds with personal funds, and misappropriated settlement funds.

This Court has previously granted and denied requests to impose reciprocal suspensions nunc pro tunc (*see Matter of Gilly*, 149 AD3d 230, 234 [1st Dept 2017]; *Matter of Caro*, 97 AD3d 148 [1st Dept 2012]). In support of its position against imposing disbarment retroactively, the Committee cites to cases where attorneys, who were disbarred based upon criminal convictions and failed to report their convictions for many years, had their names stricken from the rolls from the date of the Committee's petition to strike or from the date of the Court's order (*see Matter of Olewuenyi*, 139 AD3d 25 [1st Dept 2016]; *Matter of Zichettello*, 12 AD3d 128 [1st Dept 2004]). Here, it is unclear whether respondent has actually practiced in New York at any point in time and in any event, disbarment is a more substantial punishment than that imposed in Pennsylvania.

Under 22 NYCRR 1240.16 (c), a disbarred attorney may ap-ply for reinstatement to practice after the expiration of seven years from the entry of the order of disbarment. In this case, if respondent is disbarred nunc pro tunc to August 30, 2005, he would be eligible to immediately apply for reinstatement. However, he will still be required to make a showing to this Court by clear and convincing evidence that he has complied with the disbarment order, the rules of the Court, that he has

the requisite character and fitness to practice law, and that it would be in the public interest to reinstate him (*see* 22 NYCRR 1240.16 [a]). If respondent is disbarred as of the date he reported his foreign discipline to the Committee (April 25, 2017), he will not be eligible to apply for reinstatement until April 25, 2024.

In light of all of the circumstances and the nature of disbarment versus the punishment imposed by the Supreme Court of Pennsylvania (a three-year suspension), the Committee's motion for reciprocal discipline should be granted, and respondent is disbarred from the practice of law in the State of New York and his name stricken from the roll of attorneys and counselors-at-law, nunc pro tunc to August 30, 2005.

KAPNICK, J.P., KAHN, GESMER, KERN and MOULTON, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc to August 30, 2005.