Matter of Herzberg (2018 NY Slip Op 05526)





Matter of Herzberg


2018 NY Slip Op 05526


Decided on July 26, 2018


Appellate Division, First Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 26, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, Justice Presiding,
Judith J. Gische
Angela M. Mazzarelli
Ellen Gesmer
Anil C. Singh,Justices.


M-1132

[*1]In the Matter of Steven S. Herzberg, a suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Steven S. Herzberg, (OCA Atty. Reg. No. 4138558) Respondent.



Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent, Steven S. Herzberg, was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the Second Judicial Department on July 23, 2003.



Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Kathy Parinno, of counsel), for petitioner.
Jones LLP (Jeffrey Briem, of counsel).



Per Curiam


Respondent Steven S. Herzberg was admitted to the practice of law in the State of New York by the Second Judicial Department on July 23, 2003. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.
By order of July 18, 2017, this Court immediately suspended respondent from the practice of law, pursuant to Rules for Attorney Discipline Matters (22 NYCRR) § 1240.9 (a)(3), based on his failure to cooperate with the Attorney Grievance Committee's (the Committee) [*2]investigation of eight dishonored checks drawn against his law firm's IOLA account (153 AD3d 33 [1st Dept 2017]). On July 21, 2017, the Committee served respondent's counsel with the suspension order with notice of entry and directed respondent to comply with Judiciary Law §§ 478, 479, 484, and 486, and 22 NYCRR 1240.15. Respondent filed an affidavit of compliance, sworn to August 23, 2017, stating that he had complied with the order of interim suspension in all respects.[FN1]
The Committee now seeks an order, pursuant to Judiciary Law §§ 90(2) and 486, immediately disbarring respondent without further proceedings, for willfully engaging in the unauthorized practice of law and for continuing to hold himself out as a licensed New York attorney while this Court's suspension order was in effect, in violation of 22 NYCRR 1240.15 and Judiciary Law § 478. In addition, the Committee charges that respondent, in violation of this Court's suspension order, has failed to comply with the notification requirements of 22 NYCRR 1240.15(b) and has continued to use his escrow accounts.
Initially, the Committee presents evidence that respondent has engaged in the unauthorized practice of law with respect to roughly 10 separate matters and, in the course of doing so, has violated the terms of his suspension by continuing to hold himself out as a licensed New York attorney. For example, by email dated July 24, 2017 (after respondent's suspension), his associate, Emily Tran, Esq., retained the services of per diem attorneys for a court appearance on behalf of a plaintiff in a real estate action and directed them to contact respondent if they had any questions [FN2]. Following the court appearance, on July 25, one of the retained attorneys emailed both respondent and Tran a copy of the discovery order issued by the court at the conference. The retained attorneys advised the Committee that respondent had not informed them of his suspension prior to the July 25, 2017 conference. In addition, the Committee notes that respondent waited until August 24, 2017 to inform the court, and until August 25, 2017 to inform opposing counsel, of his inability to continue as counsel for the plaintiff in this matter due to his suspension.[FN3]
In another instance, the Committee presents evidence that respondent continued to represent a real estate lender after his suspension. The Committee cites to over 25 emails from July 20 (when respondent first learned of his suspension) to August 10, 2017, among respondent, Tran, the borrower's attorney, and the new lender's attorney, in which respondent continued to [*3]attempt to finalize a settlement. Respondent admits to emailing the parties despite being aware of his suspension, but maintains that he only did so to ensure the parties received certain documents. The borrower's attorney and the new lender's attorney both stated that respondent had not informed them of his suspension at the time of these emails.
In a third instance, respondent, while representing the defendant in a real estate action, finalized a settlement, as evidenced by roughly 20 emails dated between July 26 and August 23 among respondent, Tran and the plaintiff's counsel. In response to the Committee's charge that he informed neither the plaintiff's counsel nor the court of his suspension, respondent stated he believed that it was unnecessary to do so because none of the agreed upon settlement terms were changed after his suspension and he did no work on this case which could only be done by a licensed attorney.
In addition to the foregoing charged violations of the order of suspension, the Committee alleges that, between July 24 and August 8, 2017, respondent took on, or worked on, six additional real estate matters and, in these cases, continued to hold himself out as a licensed New York attorney and failed to notify the required parties of his suspension.[FN4]
Finally, in addition to the real estate transactions described above, in January 2018, the Committee received a complaint alleging that respondent and his former partner failed to return the purchaser's $20,000 contract deposit in an aborted real estate transaction, for which a judgment had been entered against them, which judgment, to date, remains unsatisfied. Despite respondent's repeated assertions that he reimbursed all his clients with his own funds, he has failed to answer this complaint or address this in his response to the Committee's motion.
In addition to the Committee's charges that respondent engaged in the unauthorized practice of law, the Committee submitted uncontroverted evidence that respondent continued to use two of his escrow accounts in violation of the order of suspension. Respondent swore in his affidavit of compliance that "[f]or all cases for which I may have a claim for compensation earned for work performed, I will make a motion in the appropriate forum for an order fixing my fees." However, his bank statements, which show post-suspension activity in the two accounts, establishes that this assertion is false. It is particularly noteworthy that respondent has no response to the Committee's argument that his seven post-suspension deposits, totaling $2,187,451.49, to his Citibank escrow account, and nine escrow checks drawn on that account after his suspension, constitute evidence that he continued to take on new clients after the date of his suspension. In addition, a check in the amount of $3,000 was issued by respondent to his law firm from his IOLA account at TD Bank on August 2, 2017, and was deposited to his business/operating account on August 7, 2017. Respondent claims that this check was for a legal fee that had been earned and paid prior to his suspension. However, as the Committee notes, respondent's drawing of this fee was contrary to the representation in his affidavit of compliance that he would apply to the appropriate court for a determination of any fees he claimed to be owed.
As noted above, the Committee now seeks an order, pursuant to Judiciary Law § 90(2) and § 486, immediately disbarring respondent for willfully engaging in the unauthorized practice of law and by continuing to hold himself out as a licensed New York attorney, in violation of this Court's suspension order, 22 NYCRR 1240.15, and Judiciary Law § 478. This Court finds that the Committee has presented sufficient evidence of respondent's disobedience of the July 18, 2017 order of suspension to warrant his immediate disbarment without further proceedings.
We reject respondent's contention that he should not be summarily disbarred because he did his best to comply with the terms of his suspension, did not willfully violate our suspension order and has never been subject to prior discipline. The Committee's overwhelming evidence of respondent's noncompliance with the terms of his suspension refutes these arguments. Accordingly, we find that a hearing on this matter is unnecessary.
While there is no evidence that respondent actually appeared at a closing or in court, respondent plainly communicated with various attorneys regarding pending litigation and attempted to settle various matters, all after learning of his suspension. In addition, respondent held himself out as a licensed New York attorney by allowing Tran and his paralegal to use his letterhead, which listed respondent as a licensed New York attorney. Respondent's continued actions in the previously discussed real estate matters constituted the unauthorized practice of law in violation of this Court's suspension order and Judiciary Law § 478 and § 486 (see Matter of Sampson, 145 AD3d 95 [1st Dept 2016]; Matter of Rosabianca, 131 AD3d 215 [1st Dept 2015]; Matter of Veski, 42 AD3d 122 [1st Dept 2007]; Matter of Elliot, 118 AD2d 293 [1st Dept 1986]).
Additionally, despite this Court's suspension order, which directed respondent to "desist [*4]and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another," he emailed a client, on July 27, 2017, stating that he is "operating as a paralegal." Not only is this additional evidence that respondent falsely represented in his August 23, 2017 affidavit that he was in full compliance with our suspension order, but it is also evidence that respondent continuously worked on matters while suspended, in further violation of Judiciary Law § 478 and 22 NYCRR 1240.15.
Furthermore, in the vast majority of the above-referenced matters, respondent admitted that he had not timely notified his clients, counsel or the court of his suspension, in violation of this Court's order and the notification requirements of 22 NYCRR 1240.15(b) (see Matter of Sampson, 145 AD3d at 98).
Most notably, the record demonstrates that respondent continued to use his escrow accounts while under suspension. The escrow account activity, including seven deposits from clients into respondent's account, totaling over $2,000,000, establishes that respondent failed to comply with the suspension order (see Matter of Veski, 42 AD3d at 123-124; Matter of Brown, 31 AD3d 46 [1st Dept 2006]). Finally, as of September 22, 2017, respondent's IOLA account still held $76,737.16, which violated 22 NYCRR 1240.15(c)(requiring a suspended attorney to return client funds), and Judiciary Law § 478 and § 486 (requiring the cessation of a suspended attorney's law practice). Respondent's failure to address the Committee's charges with regard to the use of his escrow accounts strongly supports granting the relief sought by the Committee.
In sum, the record shows that respondent violated this Court's July 18, 2017 suspension order by willfully engaging in the unauthorized practice of law, by taking on new legal matters, by holding himself out as an attorney in good standing, by continuing to use his escrow accounts, and by failing to notify the court, his clients, and other parties' counsel within 10 days of his suspension, all in violation of this Court's suspension order, Judiciary Law §§ 478 and 486, and 22 NYCRR 1240.15.
Accordingly, the Committee's motion should be granted, respondent disbarred from the practice of law, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.
All Concur.
Order Filed. [July 26, 2018]
The Committee's motion is granted, respondent is disbarred from the practice of law, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately, and until further order of this Court.



Footnotes

Footnote 1:On November 30, 2017, this Court granted respondent's motion to the extent of ordering a post-suspension hearing. However, on January 23, 2018, the Committee requested an adjournment of the post-suspension hearing in order to submit the present motion. The adjournment sought by the Committee was granted on March 5, 2018.

Footnote 2:Tran stated that she was not aware that respondent was suspended when she retained the services of the per diem attorneys. Respondent, however, claims that he informed Tran of his suspension on July 20, 2017. Yet, in an apparent contradiction, respondent's counsel asserts that his client informed Tran of his suspension on July 24, 2017.

Footnote 3:The Committee states that respondent's letter to the court appears to have been backdated to August 2, 2017, and is written on the letterhead of Emily A. Tran & Associates, P.C. In response, respondent asserts that he dictated this letter to his paralegal on August 2, but his paralegal did not electronically file it until 22 days later, on August 24. 

Footnote 4:In one instance, while representing the buyer in a real estate transaction, respondent, on July 25 and August 2, 2017, emailed the seller's attorney to finalize an agreement. The contract of sale, sent by respondent's paralegal on July 27, 2017, identified respondent as the "purchaser's attorney." The contract of sale initially listed respondent's firm as counsel for the sellers/purchasers and escrowee (even though he was suspended), but was later amended to reflect that Tran had taken the matters over from respondent. The seller's attorney confirmed to the Committee that respondent had not informed him about the suspension. In the second instance, respondent represented the seller in a real estate transaction and, on July 24, 2017, Tran, on behalf of Steven Herzberg & Associates, sent a proposed contract of sale to a buyer, asking for a downpayment to be made by check payable to "Steven Herzberg & Associates" and noting that the closing would take place at respondent's law office. The seller's attorneys confirmed that he was not informed of respondent's suspension. In the third instance, respondent represented the buyer in a real estate transaction and, on July 28, 2017, respondent's paralegal sent a letter to the seller's attorney attaching a partially executed contract of sale, which listed "Steven Herzberg & Associates" as the buyer's attorney and respondent's email as the contact. In the fourth instance, respondent represented the seller in a real estate transaction and, on July 25, 2017, Tran, using the letterhead of respondent's firm, sent the buyer's attorney the proposed contract of sale, asking that the downpayment be made by check payable to "Steven Herzberg & Associates." In the fifth instance, respondent represented the seller in a real estate transaction and, on July 26, 2017, respondent sent a contact to the buyer's attorney, identifying himself as the attorney for the seller and designating his law office as the location where the closing would take place. In the sixth instance, respondent represented the new lender in a real estate transaction in which a contract was signed in May 2017 (prior to his suspension). However, respondent was copied on emails dated as late as August 18, 2017, in which the parties discussed which documents would be necessary to complete the transaction. In these communications respondent informed neither the bank's attorney nor the new lender's attorney of his suspension.